IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01586-KAS

J.L.H.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

        Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

        This matter is before the Court on the **Social Security Administrative Record**
[#7], filed August 25, 2022, in support of Plaintiff's Complaint [#1] seeking review of the
decision of the Social Security Administration's Commissioner ("Defendant" or
"Commissioner"), denying claimant J.V.H.'s ("Plaintiff") claim for disability insurance
benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.
Plaintiff filed an Opening Brief [#9] (the "Brief"), Defendant filed a Response [#10] in
opposition, and Plaintiff filed a Reply [#11]. The Court has jurisdiction to review the
Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has
reviewed the entire case file and the applicable law. For the reasons set forth below, the
decision of the Commissioner is **AFFIRMED**.[2]

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits
shall identify the plaintiff by initials only." The claimant, J.V.H., has passed away and his surviving
spouse, J.L.H., has been substituted as Plaintiff. *See Minute Order* [#14].

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28
U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#8]; *Reassignment* [#15].

**I. Background**

On October 18, 2018, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning July 26, 2018. Tr. 84, 171.[3] His claim was initially denied on May 13, 2019, and again on reconsideration on July 29, 2019. Tr. 149, 165. On September 2, 2020, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 182. The Appeals Council twice denied review, on December 30, 2020, and again on September 21, 2021. Tr. 1, 50.

The ALJ first determined that Plaintiff last met the insured status requirements of the Act on December 31, 2018, and that he had not engaged in substantial gainful activity ("SGA") through December 31, 2018, the date last insured. Tr. 173. The ALJ then found that Plaintiff suffers from four severe impairments: (1) bilateral knee degenerative changes, (2) deep vein thrombosis/pulmonary embolism, (3) sleep apnea, and (4) major depressive disorder. *Id*. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." Tr. 174.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[4] with the following exceptions:

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 7 through 7-11, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to the Brief [#9] refer to the numbering used in the CM/ECF docketing system, rather than the document's original numbering. In the Response [#10] and Reply [#11], the original and CM/ECF numbering match.

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To

2

> [C]ould have occasionally climbed ramps and stairs, balanced, stooped, kneeled, crouched and crawled; and could not have climbed ladders, ropes, or scaffolds; was able to tolerate occasional exposure to unprotected heights and uneven terrain; was able to perform simple, routine, and repetitive tasks; was able to make simple decisions; required a work environment where change was minimal; was not able to work along conveyor belts or assembly lines; and was able to tolerate occasional contact with supervisors, co-workers, and the general public.

Tr. 175. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a security guard or materials handler. Tr. 180. The ALJ further found that Plaintiff was a "younger individual age 18-49" on the date last insured and that he had "at least a high school education." *Id.* The ALJ noted that transferability of job skills was immaterial to his disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Marker," "Garment Sorter," and "Cleaner, housekeeping." Tr. 180-81. The ALJ therefore found that Plaintiff was not disabled at step five. Tr. 29-30.

The ALJ's decision has become the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

4

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d

6

at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to recontact Dr. Carolynn Cobb ("Cobb") to clarify her opinions, (2) substituting his own lay opinion for that of qualified medical experts, and (3) failing to support his RFC determination with substantial evidence. *Brief* [#9] at 11-12, 16.

### A.    Duty to Recontact a Medical Source

Plaintiff argues that the ALJ erred by failing to develop the record regarding Dr. Cobb's opinion that Plaintiff could not handle work-related stress. *Brief* [#9] at 16. Specifically, Plaintiff argues that the ALJ had a duty to further inquire into Dr. Cobb's opinion that Plaintiff could not handle work-related stress, which the ALJ had found to be vague and unpersuasive. *Id*. Plaintiff further argues that this failure to develop the record was not harmless because the VE had opined that a person with such a limitation would be precluded from all work. *Id*.[5]

Under current regulations, recontacting a medical source is optional. *See* 20 C.F.R. § 404.1520b(b)(2)(i). Indeed, both Plaintiff and Defendant agree that recontacting medical sources is "unnecessary if the record as a whole contains information sufficient to formulate the claimant's RFC." *Response* [#10] at 17 (citing 20 C.F.R. § 404.1520b(c)); *Reply* [#11] at 2-3 (same). "When there is little evidence of an alleged impairment and 'substantial evidence to the contrary,' an ALJ can make an informed decision without having to develop the record further." *Leapaldt v. Colvin*, 995 F. Supp. 2d 1066, 1080 (D. Neb. 2014) (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

Plaintiff relies on two cases to support the argument that the ALJ had a duty to contact Dr. Cobb to obtain more information; however, neither case compels that

---

[5] The Court notes that, when the ALJ asked the VE about a "hypothetical individual [who] could not tolerate work stress," she did not know what the Court meant by "work stress." Tr. 132. The ALJ attempted to define it by describing it, in part, to mean "anything that would deviate . . . that would cause a – change in . . . interaction or also a change in any duties, a change in environment in – in any way, sort of any deviation from the – the parameters already set in the – in the earlier hypotheticals." Tr. 132. In response, the VE testified, "In regard to if the individual cannot tolerate any work stress, that would eliminate the jobs in the national economy." *Id*. Where the VE's conclusion rested on a defined meaning of "work stress, Dr. Cobb's conclusion did not. *See* Tr. 921-24 (concluding that the claimant "is not able to handle work related stress" without defining the phrase or providing context or the bases for the conclusion). Therefore, the ALJ's findings that Dr. Cobb's opinion was vague and unsupported are supported by relevant evidence in the record.

conclusion. *See Brief* [#9] at 16. First, in *Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005), the Tenth Circuit Court of Appeals ruled that the ALJ had erred in finding the claimant had no mental impairment at all, despite medical expert testimony and other evidence that the claimant was manifesting symptoms of post-traumatic stress disorder ("PTSD") during the insurance window, evidence that had been readily apparent from the record. The Tenth Circuit held that, in light of the non-adversarial nature of social security disability hearings, the ALJ had a duty to obtain "pertinent, available medical records which come to his attention during the course of the hearing." *Id.* (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)).

Second, in *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001), the Tenth Circuit rejected a claimant's argument that the ALJ should have recontacted a treating physician whose opinions he had considered and disregarded, under a previous version of the regulation, which contained an explicit duty to recontact. *See* 287 F.3d at 908 (discussing 20 C.F.R. § 416.912(e) (rescinded by 77 Fed. Reg. 10,651 (Feb. 23, 2012))). Even under the previous regulation, which required the ALJ to seek additional information to resolve conflicts or ambiguities within a medical source's report, *White* held that the ALJ did not automatically owe a duty to recontact a physician simply because he or she rejected that physician's opinion—rather, the evidence received from the physician had to be so incomplete as to be inadequate for consideration before the ALJ owed a duty to recontact. *Id.* (citing 20 C.F.R. § 416.912(e)). The Tenth Circuit found that the ALJ had not erred by rejecting a treating physician's opinion based on the record as a whole, given his detailed reasons for the rejection. *Id.* Taken together, these decisions indicate that, under the current regulatory scheme, an ALJ has the discretion to determine how to resolve

inconsistencies or insufficiencies and has no obligation to obtain information for a conclusion the ALJ rejects as incorrect.

Here, the ALJ was not required to recontact Dr. Cobb merely because he discounted her opinion that Plaintiff "is not able to handle work related stress." Tr. 924; *see also White*, 287 F.3d at 908 (stating that "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician"). In fact, the ALJ explained the basis for discounting this opinion: "Dr. Cobb's own findings failed to note a limitation in the claimant's ability to handle stress," and other objective medical evidence did not show any findings supporting this opinion. Tr. 179.[6] Thus, while he discounted Dr. Cobb's opinions as "in part, vague," the ALJ went further and found *this particular opinion* unpersuasive and inconsistent with all the other medical evidence. *Id.* The ALJ did not reject Dr. Cobb's opinion because of insufficient or vague information; rather, the ALJ found little evidence that Plaintiff "was unable to handle work related stress" and much evidence to the contrary, so he was not required to develop the record further. *See, e.g.*, Tr. 179 (noting that from 2016 to 2018, "although the claimant was in treatment" for many of the same impairments, "he eventually returned to work full time"); Tr. 177 (noting that, in December 2019, Neeraj Manchanda, M.D. indicated that Wellbutrin had helped improve Plaintiff's mental health symptoms); *id.* (noting that, in June 2020, Plaintiff told Kirstein Serrano, P.A. that his anxiety was controlled, denied symptoms of depression, and had "normal and cooperative behavior" during examination); *see Leapaldt*, 995 F. Supp. 2d at 1080.

---

[6] Indeed, the remainder of Dr. Cobb's notes from this session do not mention stress, so the basis for Dr. Cobb's opinion is unknown. *See generally* Tr. 921-24.

Accordingly, the Court finds no reversible error in the ALJ declining to recontact Dr. Cobb to clarify or develop her opinion that Plaintiff could not handle work-related stress.

**B.    Medical and Agency Opinions**

Plaintiff argues that the ALJ "substituted his own opinion for that of a qualified medical expert regarding Plaintiff's physical and mental impairments." *Brief* [#9] at 15. Defendant responds that Plaintiff's incorrect "argument boils down to the notion that an ALJ's decision is never supported by substantial evidence unless it rests on the opinion of a physician." *Response* [#10] at 12-13 (discussing *Colby V.W. v. Kijakazi*, No. 2:21-cv-00622-JCB, 2022 WL 2953909 (D. Utah July 26, 2022)).

Plaintiff is correct to the extent that an ALJ may not render medical opinions. *See, e.g.*, *Fulton v. Berryhill*, No. CIV-16-300-SPS, 2017 WL 4233285, at *4 (E.D. Okla. Sept. 25, 2017) (stating that the ALJ was not qualified to determine what medical treatment "would be expected if the claimant were truly disabled"); *Masse v. Astrue*, No. 09-cv-02079-REB, 2010 WL 3853318, at *4 (D. Colo. Sept. 28, 2010) (stating that the ALJ was not qualified to determine whether "synovitis" is equivalent to minimal inflammation). Plaintiff is also correct to the extent that the ALJ may not reject medical opinions *without explanation*. *Brief* [#9] at 15 (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that "an ALJ must discuss 'the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects'") (quoting *Clifton*, 79 F.3d at 1010). This does not mean that an ALJ can *never* reject a treating physician's opinion. *See, e.g.*, *White*, 287 F.3d at 909 (10th Cir. 2001) ("given . . . the detailed reasons offered by the ALJ for rejecting [a treating physician's] opinion, we do not second-guess his

11

decision"). Here, however, the ALJ neither offered medical opinions on Plaintiff's treatment and diagnosis nor discounted opinions such as Dr. Cobb's without explanation. Tr. 179 (explaining reasons for discounting Dr. Cobb's opinions).

The Court finds *Colby V.W.*, 2022 WL 2953909, at *3-4, to be persuasive. There, as here, the claimant argued that the ALJ had erroneously "determined that all the opinion evidence was unpersuasive and then . . . 'constructed the RFC out of whole cloth.'" *Colby V.W.*, 2022 WL 2953909, at *3; *cf. Reply* [#11] at 1 (stating that "the RFC was crafted out of whole cloth"). The reviewing court rejected this argument because it found that the ALJ had engaged in a "thorough discussion of all the record evidence" and had "articulated how that evidence supported his RFC determination," even though the ALJ ultimately did not find that any medical opinion was persuasive. *Colby V.W.*, 2022 WL 2953909, at *3. *Colby V.W.* cited Tenth Circuit precedent holding that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ's RFC assessment is an administrative, rather than a medical, determination." *Id.* (quoting *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012)) (additional citations omitted).

In *Israel R. v. Kijakazi*, No. 2:22-cv-00704-JCB, 2023 WL 8481408, at *3 (D. Utah Dec. 7, 2023), the claimant raised a similar argument, i.e., that the ALJ "usurped the role of medical provider" and "improperly 'averaged' the conflicting evidence to produce a light-work RFC without providing adequate written justification for doing so." The reviewing court rejected this argument, pointing out that the ALJ does not improperly assume the role of a medical expert by assessing medical and non-medical evidence before rendering an RFC finding. *Israel R.*, 2023 WL 8481408, at *3 (citing *Poe v. Comm'r*,

342 F. App'x 149, 157 (6th Cir. 2009)). Indeed, the law requires an ALJ to weigh the conflicting evidence and reach his or her own RFC determination—this is not reversible error. *Id.* (citing *Sandoval v. Kijakazi*, No. 1:21-cv-00471-JHR, 2023 WL 4231007, at *5 (D.N.M. June 28, 2023); *Lax*, 489 F.3d at 1084)).

Plaintiff claims to agree with the "general proposition" that "the ALJ need not rely on any single opinion, or any opinion, for that matter, when crafting his RFC." *Brief* [#9] at 12. She claims that her objection is that the ALJ "substituted his own opinion for that of a qualified medical expert." *Id.* at 15. However, the ALJ did not render any medical opinions, nor did he dismiss a single medical opinion without explanation. *See, e.g.*, Tr. 178-79 (explaining why the ALJ found each medical opinion unpersuasive). Instead, by evaluating the conflicting evidence and considering Plaintiff's medical treatment, age, background, experience, past work, as well as the Plaintiff's testimony, the VE's testimony, the prior administrative findings, and the third-party function reports, "the ALJ performed the precise function that the law requires, and, accordingly, Plaintiff's argument fails." *Colby V.W.*, 2022 WL 2953909, at *4.

If the ALJ has properly considered all evidence relating to impairments, the Court cannot substitute its own judgment regarding the weight to give that evidence. *See, e.g.*, *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992)). Here, the Court finds that the ALJ provided sufficient justification for the record evidence he found persuasive and the evidence he found unpersuasive in connection with the record's medical opinions.

**C.    Sufficiency of the RFC Determination**

Plaintiff argues that the ALJ's determination is not supported by substantial evidence and was crafted from whole cloth, because the ALJ "rejected every relevant opinion in the record." *Brief* [#9] at 12; *Reply* [#11] at 1-2.

However, "the ALJ is under no obligation to base [his] [RFC] assessment on any particular medical source's opinion" because "the determination of [RFC] is not a medical opinion." *Rex v. Colvin*, 26 F. Supp. 3d 1058, 1063 (D. Colo. 2014). "Instead, [RFC] is assessed based on all the relevant medical and other evidence, including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations." *Id.* (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1545(a)(3); *Noble v. Callahan*, 978 F. Supp. 980, 987 (D. Kan. 1997)). The ALJ cannot *ignore* medical opinions but is not obligated to include, in the RFC assessment, every limitation possibly suggested by a medical source. *Id.* (citations omitted). "If there are inconsistencies among the sources of evidence, 'the regulations do not say that the ALJ must resolve those inconsistencies by weighing favorable evidence more heavily; rather, the ALJ exercises his discretion to weigh the evidence and make a determination.'" *Israel R.*, 2023 WL 8481408, at *3 (quoting *Sandoval*, 2023 WL 4231007, at *5; citing *Lax*, 489 F.3d at 1084). "[T]he ALJ's RFC assessment is an administrative, rather than a medical, determination." *McDonald*, 492 F. App'x at 885 (citing Social Security Ruling 96-5p, 1996 WL 374183, at *5 (July 1996)).

Here, the record shows that the ALJ considered conflicting medical records, prior administrative findings, VE testimony, and Plaintiff's testimony in determining Plaintiff's RFC. Tr. 171-81. He explained that while he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or

medical opinion(s), including those from medical sources," he "has fully considered the medical opinions and prior administrative medical findings." Tr. 177.

The ALJ found a long history of treatment of Plaintiff's impairments, including surgery to treat Plaintiff's right knee; treatment and ongoing medication to address deep vein thrombosis; and medication that improved his memory and mental health symptoms. Tr. 176-77. The ALJ pointed to multiple places in the records where Plaintiff's anxiety and depression were controlled through medication after the date last insured. Tr. 177 (discussing January 2019 and June 2020 records from Kirstein Serrano, P.A., and a December 2019 record from Neeraj Manchanda, M.D.). In particular, the ALJ considered Plaintiff's treatment with Kirstein Serrano, P.A., and Dr. Cobb, as well as their diagnoses and notes. Tr. 177. To the extent that the ALJ found several medical opinions to be unpersuasive, he explained why: many of the opinions were remote in time, while others related to issues reserved to the Commissioner.[7] He found that some opinions were unsupported by medical findings, such as Steven Blaisdell, M.A.'s opinions ("based in large part from the claimant's wife's reports") and Dr. Cobb's work stress opinion ("the objective medical evidence failed to show any findings, reports, or opinions that supported this opinion"). Tr. 179.

The ALJ considered the fact that Plaintiff had been engaged in substantial gainful activity before seeking disability, even while he was in treatment for mental health

---

[7] Under 20 C.F.R. § 404.1520b(c)(3)(i), statements on issues reserved to the Commissioner, including opinions "that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act." The ALJ properly discounted some medical treater opinions on the basis that they related to an issue reserved to the Commissioner. *See, e.g.*, Tr. 178 (discounting David Paz, M.D.'s opinion that Claimant could not resume substantial gainful employment); Tr. 178-79 (discounting Richard Schmitt, Ph.D.'s opinions about Claimant's ability to work in certain jobs).

conditions. Tr. 179. Finally, the ALJ pointed to evidence that Plaintiff's depression and deep vein thrombosis were controlled with medication. Tr. 180. Overall, the ALJ found inconsistencies between "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms" and "the medical evidence and other evidence in the records." Tr. 177.

However, the ALJ also found that Plaintiff was more physically limited than Disability Determination Services ("DDS") estimated in either its initial determination or its reconsideration. Tr. 177-78. He considered Plaintiff's testimony that he had difficulty with his knees in determining that a "full range of light work" was not sufficiently limited. Tr. 178. The ALJ also considered evidence tending to show a disability or inability to work, concluding that the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Tr. 177. He considered third party function reports submitted by Plaintiff's wife. Tr. 179. He accepted the VE's testimony that Plaintiff was unable to perform past relevant work. Tr. 180, Tr. 130 ("Q . . . It would appear given the limitations here that that would rule out the past work; is that correct? A. That's correct, Your Honor."). Finally, the ALJ relied on the VE's testimony to determine what jobs a person with Plaintiff's limitations could perform. Tr. 181 (representative occupations included marker, garment sorter, and housekeeping cleaner).

Overall, the record contains conflicting evidence that could potentially support either a higher or lower RFC than the ALJ determined. *See, e.g.*, Tr. 177-78 (discussing DDS determinations that Plaintiff was limited to a full range of medium work or the full range of light work); Tr. 178-79 (discussing treating providers' opinions that Plaintiff was "unable to resume any substantial gainful employment" and that "claimant was unable to

handle work related stress"); Tr. 179 (noting that from 2016 to 2018, "although claimant was in treatment" for many of the same impairments, "he eventually returned to work full-time"). Finally, the Court notes that the ALJ discussed each treating provider Plaintiff discussed in the "Medical Evidence" section of her Opening Brief. *Compare* Tr. 176-179 (ALJ's discussion of medical records) *with* Brief [#9] at 5-9 (Plaintiff's discussion of medical evidence). Plaintiff fails to show that the ALJ did not properly consider the record or that there was additional record evidence the ALJ failed to consider. The Court finds that the ALJ's RFC determination has sufficient support in the record.

Thus, for the foregoing reasons, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision was based upon substantial evidence and is free of reversible legal error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 19, 2024                    BY THE COURT:


Kathryn A. Starnella
United States Magistrate Judge